The next case today is Grace Murray et al. v. Sarah McDonald, Appeal No. 21-1931. Attorney Isaacson, please introduce yourself for the record to proceed with your argument. May I please the court? I'm Eric Alan Isaacson for the objector appellate Sarah McDonald. I'd like to ask to reserve three minutes of my time if I may. Yes, you may have it. Thank you very much. There are two major issues that I'd like to focus on in this appeal. The first is the Amcam-Ortiz question of whether the three sets of different claims had to have separately represented subclasses. I think that the Supreme Court's opinions required that as a matter of due process because of radical differences in their strength and value. The second question I'd like to focus on are the incentive awards or service awards paid to the individual class representatives, which the Eleventh Circuit has held are prohibited by Supreme Court decisions, Trustees v. Reno and Pettus v. Central Railroad and Banking. With respect to the first issue, you had three sets of claims. You had claims that I think were the strongest of people who had taken the trouble to get their phone numbers on the National Do Not Call Registry. Those are folks who do not want to be bothered with nuisance phone calls. Those folks include my class, the class member that I represent, Sarah McDonald. There were also claims on behalf of people who had made specific requests to HelloFresh not to be called. Those are claims of people who are on an internal Do Not Call list, which again are people who definitely don't want to be called, but who are going to have trouble getting class certification of their claims because there are individualized questions with respect to what communications were made and when. Then a third set, which is the largest number of automatic telephone dialing system claims, which the Supreme Court had granted certiorari in, in which the preliminary approval paper said there's a risk the Supreme Court is going to toss these claims. We need to get this case settled. You can't compromise the strong claims of people on the National Do Not Call Registry at a fraction of their value because somebody else has claims that are likely worthless. I have a couple of questions. On the internal Do Not Call list, how does one get on that list? I think typically one gets on that list when you get a call from HelloFresh and you say, please don't call me again. If that's the way someone got on the list and there was a list, then why would there be a jury issue as to whether someone on the list asked to be not called? In cases that have gone to trial, Your Honor, the internal call list claims have been abandoned. In the Krakauer case, Krakauer v. Dish Network, which produced a judgment of $1,200 apiece for Do Not Call Registry claimants, just before trial, the plaintiff's counsel abandoned the internal list claims because they thought it was going to be difficult to prove at trial. My question wasn't what would happen in another case. My question is, wouldn't my proof as a plaintiff be, I'm on your list, how else could I get on it? In that case, if HelloFresh has conceded those folks are on the list, then it's just like checking it against the National Do Not Call Registry. The real problem is the automatic telephone dialing system claims, the ATTS claims. Then your group, the National Do Not Call Registry, is there a big division in your group itself between people who are covered by the arbitration agreement and people who are outside it? I don't think so. Arbitration agreement covers contractual issues while the contract is in existence. My client canceled the contract. She was not banned by the contract, and these are follow-on nuisance calls that are outside the contract and not within the arbitration agreement. But weren't there other people who were inside the contract? I don't think so. So you're saying everyone in the National DNC Registry is not subject to the arbitration clause? Well, the fact is that my client is not subject to the arbitration clause. Well, but your presentation wasn't about your client. Your presentation was about your group. Well, the presentation about the group, there may be some who have a problem, I suppose, with an arbitration clause. The judge thought the arbitration clause was not binding. With respect to the incentive awards, the Supreme Court in Trustees v. Reno established the Common Fund Doctrine, which is a doctrine that has ever since governed class actions in federal court that produce a common fund recovery. The court held that it is equitable to allow a prevailing plaintiff in a common fund case to be reimbursed for attorney's fees and litigation expenses, but said that to reimburse them for personal service on behalf of the class is inequitable and unlawful. The Supreme Court has never overruled those decisions. Rule 23 does not provide for incentive awards or service awards, does not purport to overrule those decisions. Rule 23 allows in subsection H for awards of attorney's fees. It does not permit awards of incentive awards. They're prohibited by Supreme Court authority as the Eleventh Circuit has held in Johnson v. Enpass Solutions, and I would ask that this court follow the Supreme Court authority as the Eleventh Circuit has done. It's a question of first impression, I think, in this court. The only court of appeals that is ruled differently is the Second Circuit Court of Appeals, which didn't really give much of an explanation for why it wasn't following Supreme Court authority that is, quite frankly, binding. Incentive awards create perverse incentives, as the Sixth Circuit has noted. They give class representatives a reason to compromise claims of the class, not to maximize the value of the claims of the class, but to get an incentive award that is many times larger than what they end up settling on behalf of the class for. But doesn't the rule and the interpretation of Rule 23, which didn't exist at the time of the principal authority you're relying on, exist? Doesn't that rule impose certain obligations on the class representative? And in practice, there are such obligations. When they get deposed, they're asked about what sort of attention they're paying to the case. Why, if they weren't allowed to be compensated for that effort and time, wouldn't that create a disincentive for people to be class representatives? In other words, they should net out even, not negative or not positive. I think that if Rule 23 was intended to provide for that compensation, it would have said so. Rule 23 took effect in, what, 1938? It was amended to make class actions more – with respect to class actions in 1966. It wasn't until the 1970s that district courts started to give incentive awards. It wasn't until the 1990s that they started doing it in large numbers. I don't think it's something that Rule 23 authorized. If it was something that Rule 23 authorized, you'd think that it would have started in 1938 or in 1966. Counsel, I have a question. Going back to your group of people who were called on auto calls, I tried to find out how large that group was out of the three groups compared to the others and what dollar difference it would make if they were not paid the $100 or $89. But I saw that you had made no arguments about that. Did I miss something in the record? I think that I pointed – I don't think that the numbers are in the record. I think I pointed to a case from the 11th Circuit called Cordoba, where the 11th Circuit sent the case back saying that you can't get class certification on all of this stuff. And it turned out that it was about 5% of the claims that were of people in the National Do Not Call Registry. Yes, but you were – you did discovery. You're the one objecting to the settlement. But you didn't tell us what effect, if you will, what prejudice. If there was some sort of error, what prejudice your clients have suffered. Objectors very seldom get discovery, Your Honor. If you would like to make a rule that objectors should be getting discovery in these cases, I would call for that. Okay. All right. Thank you. Thank you. Thank you. Thank you, Attorney Isakinson. Attorney Slaughter, please take the podium and introduce yourself on the record to begin. Thank you, Your Honors. My name is Stacy Slaughter, and I'm here on behalf of the class plaintiff appellees. There are plenty of facts to support what Judge Young did here, and no evidence that there was a payment to one class at the expense of others. Eight of the nine named class representatives were members of the National Do Not Call Registry class. The very class the objector says was disadvantaged. There is no evidence they settled this case at the expense of class members with their same claims. And the record is clear that each of them understood it was their obligation to protect the interests of all class members, and they each swore under penalty of perjury that they were not offered preferential treatment to settle this case and received no assurance that they would get a service award, which was entirely up to the court. Suppose one of them had said to class counsel, Are my claims stronger than the automatic dialer group claims? Would class counsel be able to answer that question? What class counsel would be able to say is that right now the glue that's common to all of the class members is that you have a contract that HelloFresh argues and continues to argue today and to this day requires you to arbitrate. So what about people who are outside of the contract period? HelloFresh argues that every form... Sure, they argue it, but... They argue that. A class member says to counsel, well, is my claim stronger if I'm outside the arbitration period than someone who's in it? It just seems that there are, at least on the surface, and perhaps that's all it is, but at least on the surface there seems to be some pretty substantial and obvious differences between some of these class members and other class members. And then you've got it set up so there's no lawyer representing them who can tell them whether their claims are worth more than those other claims. So how do they perform their duty as class representative? Who decided that all these claims are worth the same? They were all former HelloFresh customers alleging violation of the TCPA for unwanted telephone calls which have the same statutory damages. Well, some got an automatic dialer, some were on a DNC registry and got called on their residence at home. That's a pretty big difference, is it, in this line of work? The question of whether a dialing system is an auto dialer is actually a matter of expert analysis. And the objector could have asked for a discovery, didn't do so, so it was waived at. And if you look closely at the brief at page 26, it doesn't cite any expert analysis or fact to support her claim that HelloFresh's dialing system was not an auto dialer. The TCPA statute puts an explicit value on these claims, so the objector's conclusion that the ATDS claim is worthless is entirely speculative. Well, we know that when your client won in the Supreme Court, essentially, on those claims, it still signed up and decided to enter into the settlement agreement for the same amount of money that it agreed to pay before the Supreme Court decided the case. So that math suggests to me that your client all along valued those claims at zero. If you're talking about HelloFresh, HelloFresh's attorney is here, and clearly they bargained for something on those claims. They had the ability to walk on the settlement agreement, didn't they, after the Supreme Court decided the case? They did have the ability. They also had the ability to walk if more than 1% of the entire class excluded themselves. So it was a bargain for... But my point is they had the ability to walk once they found out that they had won on the automatic dialer issue. I'm not actually certain about that. I don't think that's correct. Well, the chronology says there's a settlement agreement, there's a conference with the court, the Supreme Court decides the case, there's then a deadline set for HelloFresh to say whether it will give up the arbitration clauses as required by the court or not. And they could have just said not. This is after the Supreme Court decision. That was on the arbitration issue, which is not on appeal here. The issue that's on appeal is the adequacy of it. That's got nothing to do with whether it's on appeal. My point is they could have walked. And so we can infer... Not for that Supreme Court decision, though. They recognized a risk, which is why they settled. But there's nothing in the settlement agreement that allowed them to walk on that issue. Ms. Slaughter, I'm sorry, I defer to Judge Chaota in that I have a question. If they agree to a contract that doesn't have a term of giving up the arbitration clause and the district court judge says, if you want me to approve the settlement, you're going to have to give up the arbitration clause, that party can just say, I'm not going to give up the arbitration clause, in which case there's no settlement. They could have on that arbitration clause. Okay, that's what I've been trying to establish. And doesn't that then show that they valued the claims at essentially zero because having won them, they still wanted to do the exact same deal? I guess I don't see it that way because the bargain for amount was the $14 million. And, I mean, we know that's a reasonable amount given the claims rate in this case. And we cite that at docket 108 in our brief. We have three points to show why that claims rate is adequate. So I don't view this as they settled for nothing. I do briefly want to, and I think this court also instructs in the Besdom v. Vibram case that a better deal for class members, whether it's imaginable, doesn't mean that such a deal would have been obtainable in the negotiations or the deal was actually obtained, was not within the range of reasonable outcomes. I do want to make a note about Rule 23. It was decided before the federal rules were implemented in 1937, and Greenow and Pettis do not address Rule 23 or the equitable distribution of funds to class members under Rule 23. It's also distinguishable on the facts. It involved creditors, not class members, one of whom wanted a regular annual salary that was even by 1880s standards exorbitant. And so when Mr. Isaacson made these same arguments in front of the Second Circuit in Melito, they found it inapposite to the facts before them. Counsel, if I may ask my questions now. Your brother's first argument was that the people who were called on auto-dial after the Supreme Court decision was essentially the claim was worthless. And at the time of the final approval of the settlement, everybody knew that. And so they got money that they shouldn't have gotten, and his group should have gotten money that instead went to them. You suggested that it's unclear, as a matter of fact, whether these people were called on an auto-dial system which met the Supreme Court's definition and therefore the claim wasn't worthless. What other arguments do you have that that group's claims were not worthless? Well, I'll tell you, HEDS claims aren't not viable following that ruling. They are still viable, and there are a number of arguments. First of all, like I said, it's a matter of expert analysis, and that expert analysis had not yet been done. Also, an expert may be able to show that a particular dialing system has the capacity to generate a random or sequential telephone number. And the capacity issue was something that the Facebook case did not even address. And there's language in the Facebook case that makes it clear that numbers that an ATDS generates need not even be telephone numbers, but can also be random or sequential numbers that devices use in the process of producing or storing telephone numbers. So the idea that the claim is worthless is a conclusion that the objector is making. While we conceded it narrowed the definition of what an auto-dialer is, we did not concede that it made the claims worthless. That was a matter to be litigated. And I see my time has run out. Before you leave us, okay, let's put aside worthless. Let's just say worth less than the other claims, and that it wasn't fair to the other groups to lump them in with this group. Do you have different arguments on that? That assumes two things. One, that there aren't other challenges to the do-not-call claims. But most importantly, that there were not common issues that overrode all of the individualized issues that we're talking about here, the glue that kept all of these class members together. One of the gatekeeping issues was that they had to prove that HelloFresh had vicarious liability for the telephone calls that their third-party vendors made. Okay, I have it. Thank you. And that explanation you just gave about the auto-dialer, who was it who was going to hire the expert and bear the cost of getting an expert to develop that argument that maybe these were still an auto-dialer call, and that those claims were not worthless? If I'm one of the national DNC registry groups, I might say to you as my counsel, why should I pay to do that? It's got nothing to do with me what rather, and it could only hurt me. So who does it? Well, nearly all of the DNC class members were part of the ATDS class, but it would be the class that would pay for that. And include people who have no interest in how that issue gets resolved at all. In fact, they have a hope that it gets resolved so that they can get more of the money for themselves and less go to the others. As a legal matter, this was addressed in the Cohen v. Brown University case, where the argument was made that sports teams that weren't cut would have no interest and would not care about any relief that sports teams that were cut would get in that case. And yet the overriding issues in that case meant that all of the common issues, it was adequate to have them represented by the same counsel, and they did not have conflicting interests at the end of the day. Thank you. Let me ask you the last but not least. Judge Young approved the settlement, but it really doesn't have an explanation. Does that defeat the presumption the settlement is reasonable? No. There are specific findings that he did make, and he read the record below, the entire record, which wasn't included in the appendix, and he had four hearings. And what the Cohen v. Brown University case instructs us is that while, and just six months ago, that while more specific findings are helpful, they are not obligatory. And his decision is supported here by the record, and for that reason, there's no abuse of discretion in certifying this class for settlement purposes. Thank you. Thank you. Thank you, counsel. At this time, would Attorney Peterson, I think Attorney Peterson has two minutes. Please introduce yourself on the record to begin. Good morning, and may it please the Court, Shannon Peterson on behalf of the defendant in the Appellee Grocery Delivery Services, which does business as HelloFresh. I'm here to speak on one issue, and that is the issue that Judge Young concluded, and we certainly agree with plaintiff's counsel on this issue, that the approval of the $14 million TCPA class action settlement was fair, it was reasonable, and it was adequate, and particularly given the prorate equal distribution of $100 to each class member, regardless of which class that they belonged in. And there are several reasons that support that conclusion, and for which we disagree with the objector's point to the contrary. So the objector, of course, has argued that the HCBS… When you say regardless of which class they belong to, usually a class has got a lawyer. Who is the lawyer for these two classes? Plaintiff's counsel. The two classes have the same lawyer. Yes. And if I could actually begin there, there's a critical issue that I think has been overlooked some in this discussion. It was mentioned briefly. These classes largely overlapped, almost entirely overlapped. So to the extent you're thinking that these are three separate subclasses, with each separate three different types of claims, that didn't overlap, that's mistaken. The record is clear that there was substantial overlap. The ATDS class consisted of all class members who had cell phones. The record shows that the National Do Not Call Registry subclass, over 90% of those had cell phones. Thus, over 90% of the National Do Not Call Registry subclass was also part of the ATDS class. And the same is true with respect to the Internal Do Not Call Registry class. So when plaintiff's counsel has represented to you that of the nine named plaintiffs, eight of them had claims under the National Do Not Call Registry. Also, all eight of them had claims under the ATDS. And a small fraction had claims under the Internal Do Not Call Registry. So it's not like these are three separate distinct subclasses that have separate and distinct claims. They're largely overlapping. There are several other reasons why we believe that the pro rata distribution was fair and reasonable. Again, this is the same statute, TCPA, same harm, same statutory penalty, $500 per. The statute does not treat these three claims differently. It treats them the same. Same statutory penalty, same harm. The cases cited by the objector all relate to situations where you either have completely different causes of action or, more importantly, very different harms. The TCPA provides the same statutory penalty. Thus, they should be treated the same. Also, to Plaintiff's Counsel's point, with respect to eight of the nine named class members had National Do Not Call claims, they were sufficiently represented. And they themselves had made the determination, presumably, that the pro rata distribution was fair. Again, it makes sense because they all also had ATDS claims. And then the final point that hasn't been mentioned at all that I'd like to make is that we talked about the Supreme Court's decision narrowly interpreting ATDS. And I do agree with Plaintiff's Counsel. I represent the defendant in this case. I think we had strong defenses across the board. But there was still risk as the ATDS class, particularly because the Supreme Court left open the issue of capacity, which really had yet to be determined. But what we haven't discussed today is the many weaknesses that the National Do Not Call registry class had. And we were prepared to argue both on the merits and as to class certification. And in many ways, I personally believed on behalf of the defendant, HelloFresh, that the National Do Not Call registry claims were perhaps even weaker than the ATDS claims. So the first issue is you had to prove that these were calls to a residential number. We had arguments to make that often these involved cell phones, which were used for business purposes, and thus were not residential numbers, so should not be subject to liability. We also had better arguments as to sufficient consent or invitation to be called, easier to prove consent in a National Do Not Call registry claim than in an ATDS claim. The National Do Not Call registry claims also had the defense available to them of established business relationship. We had very strong arguments that the vast majority of these people were called within 18 months of when they last received a service, and thus there was an established business relationship defense. There was also arguments that there was no liability for the National Do Not Call registry claims because the individuals did not personally place those cell phone numbers or those numbers, whether they're cell phone or not, on the National Do Not Call registry. Sometimes phone numbers are recycled. We had some arguments to make that the named plaintiffs, some of them at least, didn't personally place those numbers on the National Do Not Call registry. And then the other critical defense on the merits with respect to the National Do Not Call registry claims, and the only one that's available to this particular type of claim, is a good faith defense. For the ATDS claim, there's no good faith defense. For the internal Do Not Call claim, there's no good faith defense. But for a National Do Not Call registry claim, if you can prove that any mistakes were made in good faith and notwithstanding policies or procedures designed to prevent calls to numbers on the National Do Not Call registry, then there's no liability. And then we also, I believe, have the strongest defenses as to class certification when it came to the National Do Not Call registry claims. For example, whether or not the phone number was used as a residential number or as a business number is an individualized inquiry that we would argue would not have been suitable for class action treatment. Similarly, whether or not somebody placed their phone number personally on the National Do Not Call registry is an individualized inquiry. And we cite the district court decision in Sandow, which actually denied class certification as to a National Do Not Call registry claim because there were individualized issues as to whether or not the person had put those numbers on the National Do Not Call registry. So for all of these reasons, and heavily litigating the issues and looking at all the various factors, counsel for the defendant, myself, and counsel for plaintiffs determined that the most reasonable, fair, and adequate thing to do here, particularly given the overlap, was to simply have an equal pro rata distribution. And in fact, it would have been very difficult, very challenging, and subject to even greater criticism if we had done anything differently. This is an abuse of discretion standard. We do ask your honors affirm the decision of the district court judge in approving this final TCPA class action settlement. Thank you. Thank you. Attorney Isaacson, please take the podium and reintroduce yourself on the record to begin. Thank you. Eric Allen Isaacson for appellant Sarah McDonald. My sister made the point that all of these people getting calls were former HelloFresh customers. HelloFresh was calling them to say, hey, we used to have a contract with you. Why don't you come back? We can have a contract with you and do that again. Well, that tells me, I think, that they did not have a current contractual arbitration agreement. They did not have a contractual relationship at that point, and, therefore, none of these claims should be subject to arbitration. The fact that they were all former HelloFresh customers also indicates that it was not an ATDS. An ATDS, according to Facebook, is a random or sequential number generator. And the Supreme Court makes the point, I quote, expanding the definition of an telephone numbers. We take a chainsaw to nuance problems when Congress meant to use a scalpel, end quote. And that's it. 141 Supreme Court Reporter, page 1171. Because these were former HelloFresh customers, we know that the equipment that was being used was storing the phone numbers. And the Supreme Court says equipment that is storing phone numbers and dialing them is not an ATDS. That is absolutely clear. So under Facebook, a system where they're calling former customers is not an ATDS system. With respect to overlapping claims, my brother, Mr. Peterson, says that they almost completely overlap, that anybody who had a Do Not Call Registry claim also had an ATDS claim. He did not say that anybody who had an ATDS claim also had a Do Not Call Registry claim. It's unlikely that more than 5% or 10% of people with ATDS claims also had Do Not Call Registry claims. Where do you get that from in the record? I get that from the numbers that were in the Cordoba case in the 11th Circuit. They didn't put numbers in the record that you can make these judgments from. Quite frankly, the assertions that he made about the record showing that there was overlap I don't think is in there. I wouldn't know where to point you to. And he didn't give you a specific citation in the record for it. Mr. Peterson, my brother, Mr. Peterson, also rattled off a bunch of radically different defenses for each of the three kinds of claims. That confirms the fact that people with the three different kinds of claims needed separate representation in order to evaluate the strength and value of the same recovery to everyone. Thank you. With that, I thank the court. Thank you. Chief Judge Lynch, it would be helpful to have a Rule 27 submission by counsel pointing us to in the record facts showing the overlap. I agree. Within one week, please, both sides submit such a letter to us. That is all three counsel. All right. Thank you, Judge.  All rise.